IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

KEVIN BUTLER,
    *Pro Se* Plaintiff,

v.	Civil No. 3:19cv950 (DJN)

SPOTSYLVANIA COUNTY
GOVERNMENT, *et al.*,
    Defendants.

**MEMORANDUM OPINION**

Plaintiff Kevin Butler ("Plaintiff"), proceeding *pro se*, brings this action against Defendants Spotsylvania County (the "County") and Deborah F. Williams ("Williams") (collectively, "Defendants"), alleging that Defendants violated the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, by failing to address a strong odor in a vehicle assigned to him by the County and retaliating against him for complaining about the odor and related medical issues. This matter now comes before the Court on the County's Motion to Dismiss (ECF No. 8), moving pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's claims against the County for failure to state a claim.

For the reasons set forth below, the Court GRANTS the County's Motion to Dismiss (ECF No. 8) and DISMISSES WITHOUT PREJUDICE Plaintiff's claims against the County. The Court DIRECTS the Clerk to terminate the County as a defendant in this matter.

**I.	BACKGROUND**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept Plaintiff's well-pleaded factual allegations as true, though the Court need not accept Plaintiff's

legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Plaintiff proceeds *pro se*, the Court will afford his Complaint a liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That said, the Court need not create claims where Plaintiff has failed to plausibly allege them. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). With these principles in mind, the Court accepts the following facts.

### A. Factual Allegations

Spotsylvania County is a local jurisdiction in the Commonwealth of Virginia and employs more than fifteen individuals. (Compl. (ECF No. 1) ¶ 7.) During the relevant period, Williams served — and continues to serve — as the Commissioner of Revenue ("COR") for the County, a constitutional officer elected by the County's residents every four years.[1] (Compl. ¶ 6.) In 2004, Plaintiff began his employment as an Appraiser Trainee in the COR's Office, charged with collecting and verifying data on residential properties. (Compl. ¶ 11.) In 2005, Plaintiff became an Appraiser I, with the additional responsibilities of appraising "less complex real property" and "interpreting building plans . . . and other factors that affect property value[s]." (Compl. ¶ 12.) Finally, in November 2012, Plaintiff received a promotion to the Appraiser II position, which required him to assess more complex residential and agricultural real property. (Compl. ¶¶ 13-15.)

To assist Plaintiff with his job duties, from 2005 to 2015, the County provided him with a 2002 GMC Sierra. (Compl. ¶ 15.) In January 2015, the County replaced Plaintiff's GMC with a

---

[1] Although Plaintiff does not allege that Williams serves as a constitutional officer of the County elected to a four-year term, the Court takes judicial notice of these facts for purposes of resolving the County's Motion to Dismiss, because the nature of the COR position constitutes publicly available information "whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Indeed, the Virginia Constitution and the Code of Virginia provide for the election of a COR by the voters in each locality. Va. Const. art. VII, § 4; Va. Code § 15.2-1600.

2015 Jeep Compass, which had an internal registration number "AO26" (the "Vehicle"). (Compl. ¶ 16.)

Beginning in 2016, Plaintiff noticed an odor inside the Vehicle. (Compl. ¶ 17.) This odor, which Plaintiff described to several employees as "like a pack of new balloons," became "more pungent" over time. (Compl. ¶ 18.) Finally, in September 2016, Plaintiff sent an email to Williams informing her of the odor. (Compl. ¶ 19.) In response, technicians at a county authorized service center replaced the air cabin filter in the Vehicle. (Compl. ¶ 19.)

Following the filter replacement, the air quality inside the Vehicle briefly improved, but the odor returned after a few days, at which point Plaintiff again contacted Williams. (Compl. ¶ 20.) On October 13, 2016, technicians inspected the Vehicle a second time but found no issues. (Compl. ¶ 21.) Williams informed Plaintiff that the technicians could not identify any odor and suggested the possibility that Plaintiff could switch vehicles. (Compl. ¶ 21.) However, Williams did not follow through with this suggestion. (Compl. ¶ 21.)

On October 26, 2016, Plaintiff again sent an email to Williams complaining about the odor inside the Vehicle. (Compl. ¶ 23.) Plaintiff referred Williams to a co-worker who also smelled the odor. (Compl. ¶ 23.) Plaintiff also invited Williams to personally inspect the Vehicle. (Compl. ¶ 23.) And Plaintiff requested permission to purchase a mold cleaning spray and charcoal cabin air filter. (Compl. ¶ 24.) Williams responded that her office would reimburse Plaintiff for the cleaning spray and charcoal filter. (Compl. ¶ 24.)

Shortly thereafter, Williams called Plaintiff into her office and notified him that his conduct provided grounds for his termination. (Compl. ¶ 25.) Williams also refused to speak with the co-worker identified by Plaintiff or to personally inspect the Vehicle. (Compl. ¶ 25.) Although Williams acknowledged that other employees had confirmed the odor, she denied

3

Plaintiff's request to take the Vehicle to a different service center for a second opinion. (Compl. ¶ 25.)

Two months later, in December 2016, Williams denied Plaintiff's promotion to the Appraiser III position, even though Plaintiff "was the most tenured Appraiser II" at the time. (Compl. ¶¶ 26-27.) Neither Williams nor Plaintiff's other supervisors responded to Plaintiff's request for an explanation regarding the promotion denial. (Compl. ¶ 27.) Instead, Williams promoted one of Plaintiff's co-workers to the Appraiser III position. (Compl. ¶ 28.) Notably, the promoted co-worker had eleven fewer years of experience than Plaintiff and did not meet the minimum requirements outlined in the position posting, including the necessary appraisal license. (Compl. ¶ 28.) Williams also promoted another of Plaintiff's co-workers to the Appraiser II position, the same position as Plaintiff, even though the co-worker did not satisfy the stated requirements of that position and had ten fewer years of experience than Plaintiff. (Compl. ¶ 29.)

Following Plaintiff's promotion denial, in January 2017, the Director of Human Resources for the County, Rose Heyward ("Heyward"), requested that Plaintiff meet with her. (Compl. ¶ 30.) During this meeting, Plaintiff complained that Williams had denied him a promotion and threatened to terminate his employment in retaliation for his complaints about the odor inside the Vehicle. (Compl. ¶ 30.) Plaintiff also expressed concern that Williams had promoted two of his co-workers who lacked the requisite qualifications for their positions. (Compl. ¶ 31.) Heyward dismissed these complaints as "'ankle-biting.'" (Compl. ¶ 32.)

Later that same month, Plaintiff learned that Williams had told Plaintiff's co-workers that Plaintiff quit after not being promoted. (Compl. ¶ 33.) The chief appraiser had also reportedly told Plaintiff's co-workers that Plaintiff incorrectly valued the land in his assigned areas.

(Compl. ¶ 33.)  In fact, Plaintiff received positive job performance evaluations throughout his employment.  (Compl. ¶ 34.)  Williams also took other actions against Plaintiff, including:  (1) in March 2017, yelling at Plaintiff from the across the hall after Plaintiff did not greet Williams to her liking, (Compl. ¶ 35); and, (2) in April 2017, preventing Plaintiff from taking the second part of a course necessary to receive a promotion to commercial appraiser and instead training one of Plaintiff's less qualified co-workers for that role.  (Compl. ¶¶ 36-37).

On May 4, 2017, Plaintiff sent an email to Heyward to discuss the deterioration of his work environment, but Heyward "failed to adequately reply" to Plaintiff's concerns.  (Compl. ¶ 38.)  Plaintiff sent a follow-up email to Heyward on May 16, 2017, but she again failed to adequately respond.  (Compl. ¶ 39.)  Finally, on June 7, 2017, Plaintiff emailed the County Administrator, Mark Taylor, but received no response.  (Compl. ¶ 40.)  In August 2017, Williams completed Plaintiff's performance evaluation, in which she wrote several negative comments that Plaintiff alleges are false.  (Compl. ¶ 41.)

Meanwhile, over the course of 2017, Plaintiff began experiencing an irritated throat, stomach problems and headaches after driving the Vehicle.  (Compl. ¶ 42.)  Plaintiff attempted to remedy these health problems by cleaning the Vehicle himself, changing work shirts after driving and drinking more water.  (Compl. ¶ 43.)  Plaintiff also limited his time inside the Vehicle to the afternoons so that he could go home, shower and change immediately after driving.  (Compl. ¶ 44.)  When these attempts failed, on November 28, 2017, Plaintiff emailed Williams to inform her about his health problems.  (Compl. ¶ 45.)  Williams requested specifics on these problems, which Plaintiff provided.  (Compl. ¶ 46.)

Three days later, on November 30, 2017, Williams terminated Plaintiff's employment.  (Compl. ¶ 47.)  During this conversation, Plaintiff requested a different vehicle assignment, but

Williams denied his request. (Compl. ¶ 47.) Almost a year after his termination, on September 26, 2018, Plaintiff filed a complaint with the Equal Employment Opportunity Commission and received a notice of his right to sue on September 26, 2019. (Compl. ¶¶ 48-49.)

### B. Plaintiff's Complaint

On December 26, 2019, Plaintiff filed his Complaint (ECF No. 1) against Defendants, asserting three counts for relief based on the above allegations. In Count One, Plaintiff alleges that Defendants unlawfully terminated him due to his disability, namely: the medical problems caused by the odor inside the Vehicle. (Compl. ¶¶ 50-58.) In Count Two, Plaintiff alleges that Defendants violated the ADA by failing to provide a reasonable accommodation after he complained that the odor inside the Vehicle caused him to experience medical issues. (Compl. ¶¶ 59-67.) And, in Count Three, Plaintiff alleges that Defendants retaliated against him in violation of the ADA and Title VII by threatening to terminate his employment, denying him a promotion, creating a hostile work environment and eventually terminating his employment. (Compl. ¶¶ 68-81.)

In all three Counts, Plaintiff alleges that the County is liable under a *respondeat superior* theory of liability, because Williams acted "in the course and scope of her duties as [COR] for [the] County." (Compl. ¶¶ 53, 62, 78.) Ultimately, Plaintiff seeks equitable relief, compensatory and punitive damages, prejudgment interest, and costs and fees. (Compl. at 13.)

### C. The County's Motion to Dismiss

In response to Plaintiff's Complaint, on April 13, 2020, the County filed a Motion to Dismiss (ECF No. 8), moving pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's claims against the County for failure to state a claim. In support of its Motion, the County asserts that Williams serves as a constitutional officer distinct from the County and

therefore Plaintiff cannot hold the County liable for Williams's actions. (Spotsylvania County's Br. in Supp. of Mot. to Dismiss ("County Br.") (ECF No. 9) at 1.) The County cites to provisions of the Virginia Constitution and the Code of Virginia that establish the COR position as a separate position from the County's government, meaning that the County does not and cannot control or supervise Williams's actions. (County Br. at 3-4 (citing Va. Const. art. VII, § 4; Va. Code § 15.2-1600).) And although the County handled some administrative tasks related to Plaintiff's employment, the County asserts that these tasks did not afford the County sufficient control over Plaintiff's job performance to render the County an "employer" liable to Plaintiff under the ADA or Title VII. (County Br. at 4-5.)

Plaintiff filed his Response to the County's Motion on May 11, 2020, (Pl.'s Mem. of L. in Opp. to Spotsylvania County's Mot. to Dismiss ("Pl.'s Resp.") (ECF No. 11)), and the County filed its Reply on May 18, 2020, (Reply Br. in Supp. of Mot. to Dismiss (ECF No. 13)), rendering the County's Motion now ripe for review.

## II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

### III.   ANALYSIS

The County's Motion to Dismiss boils down to whether the County constitutes Plaintiff's "employer" under the ADA and Title VII. As mentioned, the County argues that it does not constitute Plaintiff's "employer" under the relevant statutes, because Williams exerted full and unfettered control over Plaintiff's employment as an elected officer with a constitutionally distinct role from the County. (County Br. at 3-4.) Plaintiff responds that the County exerted sufficient control over him to constitute his "employer" under the ADA and Title VII, because the County "handled and possessed [Plaintiff's] employment records," Plaintiff "went to work in a County office and drove a County vehicle" and the "County paid [Plaintiff's] unemployment compensation." (Pl.'s Resp. at 2.) Plaintiff asserts that the County therefore exerted "greater

8

control [over Plaintiff's employment] than the simple 'back-office administrative processes' alleged by the County." (Pl.'s Resp. at 2.) The Court agrees with the County and finds that the County does not constitute Plaintiff's "employer" under either the ADA or Title VII, requiring dismissal of Plaintiff's claims against the County.

Both the ADA and Title VII provide for liability against employers. 42 U.S.C. § 2000e-2; §§ 12111, 12112. Both statutes also "define[] 'employer' in essentially the same way." *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 155 (4th Cir. 2012); *see* § 2000e(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person."); § 12111(5)(A) (defining "employer" the same way). Therefore, the caselaw relevant to the definition of "employer" under one statute can be applied interchangeably to the definition of "employer" under the other. *See Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 992 n.2 (6th Cir. 1997) (noting that courts interpreting Title VII and the ADA can rely on caselaw "developed under [both] statutes"). Under this joint definition, no party refutes that, assuming Williams employs fifteen or more individuals, Williams constitutes Plaintiff's "employer" under the ADA and Title VII. The question then becomes whether the County also qualifies as Plaintiff's employer.

To that end, "courts have found that two parties can be considered joint employers and therefore both be liable under Title VII if they 'share or co-determine those matters governing the essential terms and conditions of employment.'" *Butler v. Drive Auto. Indus.*, 793 F.3d 404, 408 (4th Cir. 2015) (quoting *Bristol v. Bd. of Cnty. Comm'rs*, 312 F.3d 1213, 1218 (10th Cir. 2002) (en banc)). This so-called "joint employment doctrine" constitutes "the law of this Circuit," *Butler*, 793 F.3d at 409, and courts in this Circuit have applied the doctrine in the

context of both Title VII and ADA claims, *see, e.g.*, *Mason v. Sun Recycling, LLC*, 2020 WL 1151046, at *8 (D. Md. Mar. 9, 2020) (applying joint employment doctrine to find that the defendant constituted a joint employer of the plaintiff for purposes of the plaintiff's Title VII and ADA claims).[2]

To determine whether a putative employer in fact constitutes an "employer" under the joint employment doctrine, the Fourth Circuit has adopted the "hybrid test," which requires district courts to consider nine factors, namely:

(1) authority to hire and fire the individual;

(2) day-to-day supervision of the individual, including employee discipline;

(3) whether the putative employer furnishes the equipment used in the place of work;

(4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes;

(5) the length of time during which the individual has worked for the putative employer;

(6) whether the putative employer provides the individual with formal or informal training;

(7) whether the individual's duties are akin to a regular employee's duties;

---

[2] Notably, the County could also be considered Plaintiff's employer under the "single employer doctrine," in which a parent employer is held liable for wrongs against the employees of its subsidiary. However, the single employer doctrine proves inapplicable here, because the Virginia Constitution explicitly creates the COR position as a separate position from the local government, precluding any parent-subsidiary relationship. Va. Const. art. VII, § 4; *see Leuenberger v. Spicer*, 2016 WL 355090, at *11-12 (W.D. Va. Jan. 28, 2016) (finding the single employer doctrine inapplicable to claims against constitutional officer and locality, because the constitutional officer served "at the pleasure of the voters who elect[ed] him," not the locality).

For the same reasons, Plaintiff's *respondeat superior* theory of liability must also fail, because Williams in fact serves at the pleasure of her constituents and therefore cannot be considered an employee of the County. Accordingly, the County remains liable to Plaintiff only if it constitutes his joint employer.

(8) whether the individual is assigned solely to the putative employer; and

(9) whether the individual and putative employer intended to enter an employment relationship.

*Butler*, 793 F.3d at 414. Of these factors, none are dispositive, though the degree of control that a putative employer has over an employee "remains the 'principal guidepost' in the analysis." *Id.* Therefore, the first three factors, which speak to control, "are the most important." *Id.*

Applying these principles, district courts have found that constitutional officers like Williams constitute employers under the ADA and Title VII, because they retain "sole and exclusive discretion to hire and fire [their employees]," independent of "both municipal and state governments." *Wiatt v. Marrs*, 2005 WL 552563, at *1 (W.D. Va. Feb. 22, 2005); *see Lee v. Va. Beach Sheriff's Office*, 2014 WL 1493560, at *9 (E.D. Va. Apr. 14, 2014) (noting that whether to appoint or reappoint deputy sheriffs fell within the "sole discretion" of the sheriff as a constitutionally distinct officer). And at least one court in this District has held that an employee of a COR cannot sustain an ADA claim against the relevant locality as well, because only the COR qualifies as the employee's "employer." *Kellum v. Isle of Wight Cnty.*, 2020 WL 1304083, at *2 (E.D. Va. Mar. 19, 2020) (Smith, J.).

After reviewing these cases and the factors enumerated in *Butler*, the Court finds that the County does not constitute Plaintiff's joint employer based on the facts alleged in Plaintiff's Complaint. For one, the County lacked any authority to hire or fire Plaintiff — the first factor under the hybrid test. Indeed, the Code of Virginia empowers Williams, and only Williams, to "appoint one or more deputies . . . [to] discharge any of the official duties of [the COR] during h[er] continuance in office." Va. Code § 15.2-1603. And "[a]ny such deputy may be removed from office by his principal" — in this case, Williams. § 15.2-1603. Accordingly, by statute,

11

Williams retained the exclusive discretion to appoint and remove Plaintiff, and, by negative implication, the County lacked any authority to do the same.

As for the second factor — day-to-day supervision — Plaintiff fails to allege that the County or its officials supervised his work in any way. In fact, Plaintiff's allegations suggest that the day-to-day supervision of his work fell solely under the purview of Williams and her deputies. (*See* Compl. ¶¶ 19 (alleging that Plaintiff first brought the odor inside the Vehicle to Williams's attention), 20 (alleging that Plaintiff contacted Williams, not county officials, after the odor returned following the replacement of the cabin air filter), 23 (alleging that Plaintiff sent another email to Williams in October 2016), 25 (describing a meeting between Plaintiff and Williams during which Williams warned Plaintiff that his conduct provided grounds for her to terminate his employment), 26 (alleging that, in December 2016, Williams denied Plaintiff a promotion to Appraiser III), 41 (alleging that Williams completed Plaintiff's performance evaluation in August 2017).) And although Plaintiff alleges that he met or communicated with officials from the County regarding the odor — namely, Heyward and the County Administrator — that Plaintiff perceived those individuals as supervisors does not alter the fact that neither official exerted day-to-day control over Plaintiff's job performance. (Compl. ¶¶ 30-32, 38-40.)

In fact, the Code of Virginia explicitly provides that "the governing body or the chief administrative officer of a locality" cannot require a COR:

> to exercise a power or perform a duty which the [COR] is not required to perform under applicable state law without the consent of such officer, nor by designation to diminish [the COR's] powers or duties as provided by applicable state law *including the power to organize their offices and to appoint such deputies, assistants and other individuals as are authorized by law upon such terms and conditions specified by [the COR].*

§ 15.2-1600(B) (emphasis added). Therefore, if the County attempted to control Plaintiff's employment, it would violate state law and the prerogatives of the office that Williams holds.

That said, the third factor — furnishing of equipment and the place of work — weighs in Plaintiff's favor. Specifically, Plaintiff alleges that the County provided both the Vehicle, (Compl. ¶¶ 15-16), and his workspace, (Pl.'s Resp. at 2).[3] However, the Court finds these facts unavailing when compared with the Code of Virginia's explicit prohibition against the County's interference in Plaintiff's employment. Indeed, considering that, by statute, the County cannot diminish or otherwise control Williams's decisions regarding the internal organization of her office, in providing workspace and vehicles to assist Plaintiff in the performance of his duties, the County obtained no more control over Plaintiff's job performance than a landlord possesses over the employees of its tenants.

Neither do Plaintiff's allegations satisfy the remaining factors under the hybrid test. Of the remaining factors, Plaintiff all but concedes that only the fourth factor — possession and responsibility over his employment records — militates in his favor. Specifically, in his Response, Plaintiff asserts that the County "handled and possessed [his] employment records[,] including payroll, insurance, and taxes" and paid his unemployment compensation, which "demonstrate greater control [over Plaintiff] than . . . alleged by the County." (Pl.'s Resp. at 2.) However true these assertions may be, the Court again finds them unavailing in light of the fact that, by statute, the County could exert no control over Plaintiff's employment.

Indeed, in *Leuenberger v. Spicer*, the Western District of Virginia considered a similar relationship between a commonwealth's attorney — a constitutional officer — and a local county government and found that the county government could not be considered a joint employer of the plaintiff, a former assistant commonwealth's attorney. 2016 WL 355090, at

---

[3] Although Plaintiff does not allege this additional fact in his Complaint, for purposes of its analysis, the Court will accept as true this fact and the other facts asserted in Plaintiff's Response.

13

*12-13 (W.D. Va. Jan. 28, 2016). In reaching this conclusion, the Western District of Virginia equated the county's management of the plaintiff's benefits, payroll and employment records to the functions of a "payroll administrator," which proved insufficient considering that the county had no control over the plaintiff's day-to-day work. *Id.* Similarly, here, although the County may have provided certain human resources services to Plaintiff, its provision of those services fails to overcome the County's complete lack of authority to supervise or control Plaintiff's work. As the Fourth Circuit opined in *Butler*, "control remains the 'principal guidepost' in the [joint employer] analysis," and Plaintiff fails to plausibly allege sufficient control by the County over his employment. *Butler*, 793 F.3d at 414.

In *Butler*, the Fourth Circuit also acknowledged that the hybrid test factors are not to be applied rigidly in every context and authorized modifications to those factors where appropriate. *Id.* (citations omitted). Because the relevant context here — local government — often involves the sharing of resources between agencies, even constitutionally distinct ones, the Court affords less weight to the factors concerning the furnishing of equipment and workspace and the possession and management of employment records. To hold otherwise risks upending the often-prudent practice among local governments of sharing resources and conserving taxpayer money by threatening local governments with liability merely for assisting other government officials in the delivery of local services. As such, the Court remains unconvinced by the fact that the County provided human resources services, workspace and vehicles to Plaintiff.

Ultimately, after considering the factors of the hybrid test and Plaintiff's allegations, the Court finds that Plaintiff fails to plausibly allege that the County constitutes his "employer" under the ADA or Title VII and Plaintiff's claims against the County must therefore fail. Accordingly, the Court will dismiss without prejudice Plaintiff's claims against the County.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS the County's Motion to Dismiss (ECF No. 8) and DISMISSES WITHOUT PREJUDICE Plaintiff's claims against the County. The Court DIRECTS the Clerk to terminate the County as a defendant in this matter.

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically, forward a copy to *pro se* Plaintiff and notify all counsel of record.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated:  May 21, 2020